**DeNITTIS OSEFCHEN PRINCE, P.C.**
Stephen P. DeNittis (SD-0016)
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
Phone No: (856) 797-9951
Fax No: (856) 797-9978

Attorneys for Plaintiff and the Proposed Class

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTIAN REID, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>RCN TELECOM SERVICES, LLC; RCN RCN TELECOM SERVICES (LEHIGH), LLC; and PATRIOT MEDIA CONSULTING, LLC;<br><br>                    Defendants. | CIVIL ACTION NO. 3:20-CV-12571<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

## <u>INTRODUCTION</u>

1.    This is a proposed class action, brought under New Jersey law, challenging Defendants' uniform policy of charging their customers a $15.00 "Data Late Fee" on their broadband internet service when the Defendants' own terms and conditions promise that Defendants will charge customers "a one-time late fee of not more than $9.00."

2.    Plaintiff brings this proposed class action under New Jersey law because Defendants' own terms and conditions contain a choice of law clause which provides that New Jersey law applies to the broadband internet service agreement between Defendants and Plaintiff and the Class no matter where the customer resides or where the services are provided.

1

3.      Plaintiff seeks injunctive, declaratory, monetary and statutory relief for himself

and the proposed Class to obtain redress and to end Defendants' $15.00 late fee policy, bringing:

a.  A claim under the New Jersey Consumer Fraud Act ("CFA"), in that Defendants' uniform policy of charging a $15.00 late fee as described herein constitutes an unconscionable commercial practice, and Defendants' written statement to the Class representing that any late fee will be limited to $9.00 is a false statement of affirmative fact in violation of N.J.S.A. § 56:8-2;

b.  A claim under the New Jersey Truth in Consumer Contract Warranty and Notice Act ("TCCWNA"), in that Defendants have presented, shown, offered and submitted consumer notices and signs to Plaintiff and the Class that violated their clearly established rights arising under state law, as prohibited by N.J.S.A. § 56:12-15;

c.  A claim under New Jersey common law for breach of contract based on Defendants' uniform policy of charging customers a $15.00 late fee when the very documents which Defendants assert constitute the agreement between RCN and the Class state that any late fee will be limited to $9.00; and

d.  A claim under the New Jersey Declaratory Judgment Act, N.J.S.A. § 2A:16-51, et seq., for an order for injunctive and declaratory relief: (1) declaring that Defendants' uniform policy of charging a $15.00 late fee illegal; (2) enjoining RCN from charging a late fee that is greater than allowed by contract or law, (3) ordering RCN to hold in constructive trust all excessive "Data Late Fee" payments (i.e., all amounts greater than $9.00 per late fee) received from the Class since January 1, 2020; and (4) ordering RCN to perform an accounting of all such excessive "Data Late Fee" payments received.

## PARTIES

4.      Christian Reid is a citizen and resident of Northampton County, Pennsylvania in

the Lehigh Valley. Like other Class members, Reid was a customer of Defendants' broadband

internet service during the proposed class period and was charged and paid the unlawful $15.00

late fee complained of herein.

5.    Defendant RCN Telecom Services, LLC ("RCN Telecom") is a limited liability corporation headquartered in Princeton, New Jersey which provides broadband internet services to customers throughout six major metropolitan regions in the U.S., including New York, New York; Chicago, Illinois; Boston, Massachusetts; Washington, D.C.; Philadelphia, Pennsylvania; and Allentown, Pennsylvania. RCN Telecom Services, LLC is named as a Defendant herein as to Plaintiff Reid and the proposed "Main-Class" as described in greater detail herein.

6.    Defendant RCN Telecom Services (Lehigh), LLC ("RCN Lehigh") is a wholly owned subsidiary of RCN Telecom. RCN Lehigh is named as a Defendant herein solely as to the proposed "Lehigh Sub-Class" as described in greater detail herein because it appears that RCN Telecom and RCN Lehigh are one and the same entity.

7.    Both RCN Telecom and RCN Lehigh appear to hold themselves out to the Class—and to the world at large—as simply "RCN." For example, RCN's marketing, its website, and its customer contractual documents including the **Customer Terms and Conditions**[1], **Internet Access Agreement**[2], **High Speed Cable Modem Service Addendum**[3], and the **Online Shopping Terms and Conditions**[4] described herein repeated refer to "RCN" as the service provider, without specifying which of the many subsidiaries with "RCN" in the name this is intended to signify.

---

[1] The RCN **Customer Terms and Conditions** is available at https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/customer-terms-and-conditions/ (last accessed October 18, 2020).
[2] The RCN **Internet Access Agreement** is available at https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/internet-access-agreement/ (last accessed October 18, 2020).
[3] The RCN **High Speed Cable Modem Service Addendum** is available at https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/high-speed-internet-service-addendum/ (last accessed October 18, 2020).
[4] The RCN **Online Terms and Conditions** is available at https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/online-shopping-terms/ (last accessed October 18, 2020).

8.    Meanwhile, the few instances in which RCN does identify a particular entity are inconsistent and contradictory. For example, several representations indicate that RCN Telecom Services, LLC is the relevant or contracting entity. The RCN website instructs all RCN customers, regardless of location or region, that: "you can mail your payment to the following location: RCN Telecom Services, LLC PO Box 11816 Newark, NJ 07101-8116." Billing statements to customers in all RCN regions and locations display that same P.O. Box ("PO Box 11816, Newark, NJ 07101-8116") as the location to where payments are to be mailed. The footer of the RCN website states: "©2020 RCN Telecom Services, LLC. All Rights Reserved." Yet in contrast, Plaintiff Reid's RCN bills state that "All services, including telecommunications services, are provided by RCN Telecom Services (Lehigh) LLC."

9.    Further, it appears that numerous "RCN" entities, including Defendant RCN Telecom and Defendant RCN Lehigh operate as a single, integrated company, under the RCN brand with common management, a common corporate headquarters located at 650 College Road East, Princeton, New Jersey, and common policies and practices with respect to the provision of internet services including the $15.00 late fee at issue in this complaint.

10.    Defendant Patriot Media Consulting, LLC ("Patriot") likewise has its principal place of business in Princeton, New Jersey at the same address as the RCN entities. Patriot is named as a defendant herein as to Plaintiff Reid and the proposed "Main-Class" as described in greater detail herein. According to a company press release on the RCN website, Patriot has managed RCN since 2010.[5] That same press release states that when TPG Capital purchased a majority stake of RCN in 2016, it tapped Patriot to continue managing RCN. *Ibid.* In the "Company History" section of the RCN website, RCN confirms that as of 2018, Patriot

---

[5] See RCN's August 15, 2016, press release posted on the RCN website at https://www.rcn.com/hub/about-rcn/our-history/ (last accessed October 18, 2020).

4

continued to assume management of RCN.[6] Patriot's own website currently states that "in August 2010, Patriot Media Consulting assumed day-to-day management of RCN's properties."[7] Jim Holanda continues to be the CEO of both the Patriot and the RCN entities. Various Patriot officers and managers list their job titles on LinkedIn as being simultaneously employed by both "RCN Telecom Services" and "Patriot." Further, opposing counsel in this case has admitted to Plaintiff's counsel that Patriot is involved in the management of RCN.

11.     This evidence provides a plausible basis to conclude that Patriot dominated and was responsible for the day-to-day management of RCN Telecom and RCN Lehigh during the class period. This evidence further indicates that Patriot had a direct financial interest in the amount of revenue RCN Telecom and RCN Lehigh collected from its customers, and also that Patriot may be an owner of RCN Telecom and RCN Lehigh.

12.     Based on this evidence, Plaintiff alleges that Patriot, along with the RCN Defendants, jointly created, implemented, participated in the collection of, and shared in the proceeds from, the unlawful $15.00 late fee at issue in this complaint.

13.     Except where otherwise indicated, RCN Telecom, RCN Lehigh and Patriot are collectively referred to herein as "RCN" or "Defendants."

## JURISDICTION AND VENUE

14.     This Court has personal jurisdiction over Defendants because, inter alia, each Defendant: (a) has its headquarters and principal place of business in Princeton, New Jersey; (b) transacts business in this state; (c) maintains continuous and systematic contacts in this state prior to and during the class period; and (d) purposefully availed themselves of the benefits of

---

[6] See "History of RCN" on the RCN website at https://www.rcn.com/hub/about-rcn/our-history/ (last accessed October 18, 2020).

[7] See Patriot's website at http://www.patriotmediaconsulting.com/properties-rcn.html (last accessed October 18, 2020).

doing business in this state. Accordingly, Defendants maintain minimum contacts with this state which are more than sufficient to subject them to service of process and to comply with due process of law.

15.    All of the Defendants are headquartered in Princeton, New Jersey at the same address: 650 College Road East, Princeton, New Jersey 08540. Each Defendant is thus a citizen of Mercer County, New Jersey.

16.    Defendants jointly created and implemented the unlawful scheme and associated policies at their corporate headquarters in Princeton, New Jersey.

17.    Venue is proper in this federal judicial district because Defendants are headquartered in Mercer County, regularly transacted and continue to transact business in Mercer County, and created and implemented the unlawful policy challenged herein in and from their principal place of business in Mercer County.

18.    Moreover, the **Internet Access Agreement** set forth on Defendants' website[8], which is explicitly incorporated into the RCN **Customer Terms and Conditions**[9] and purports to give rise to a binding agreement between RCN and its customers (including Plaintiff and the Class), states that New Jersey law applies to the agreement to provide services and that any claim brought against RCN must be brought in New Jersey.

---

[8] See https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/internet-access-agreement/ (last accessed October 18, 2020).
[9] See https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/customer-terms-and-conditions/ (last accessed October 18, 2020).

### THE APPLICABILITY OF NEW JERSEY LAW

19.    The **Internet Access Agreement** set forth on Defendants' website[10], which is incorporated into the RCN **Customer Terms and Conditions**[11] and purports to give rise to a binding agreement between RCN and its customers (including Plaintiff and the Class), requires any dispute between RCN and its customers to be governed by the laws of the State of New Jersey, excluding its conflicts of law rules. Thus, all claims made herein against Defendants by Plaintiff and the class are properly brought under New Jersey law.

### THE UNIFORM POLICY WHICH GIVES RISE TO THE CLASS CLAIMS

20.    RCN is a provider of broadband internet, television, and telephone services to more than 400,000 customers in six metropolitan areas in the United States: New York, New York; Chicago, Illinois; Boston, Massachusetts; Washington, D.C.; Philadelphia, Pennsylvania; and Allentown, Pennsylvania. Virtually all of RCN's customers subscribe to broadband internet; many also subscribe to television and/or telephone service as part of a "bundled" service plan.

21.    The RCN **Customer Terms and Conditions**[12] set forth on RCN's website purports to give rise to a binding agreement between RCN and its customers including Plaintiff and the Class. There is only one version of the **Customer Terms and Conditions** posted on the RCN website, no matter where the services are provided or where the customer resides.

22.    Thus, RCN customers in Pennsylvania such as Plaintiff, and customers in all the other states where RCN provides internet services, all see and review the exact same version of the RCN **Customer Terms and Conditions**. See Attachment B, RCN **"Customer Terms and**

---

[10] See https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/internet-access-agreement/ (last accessed on October 18, 2020).
[11] See https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/customer-terms-and-conditions/ (last accessed October 18, 2020).
[12] See https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/customer-terms-and-conditions/ (last accessed October 18, 2020).

7

**Conditions"** printed out by Plaintiff's counsel from https://www.rcn.com/hub/about-rcn/policies-and-disclaimers on August 6, 2020.

23.    The **Customer Terms and Conditions** contain an integration clause:

> **"This Service Order, together with the terms and conditions contained herein, constitute the entire agreement between the Customer and RCN."**

24.    The **Customer Terms and Conditions** further address what happens if an RCN customer fails to pay an RCN bill in a timely manner, stating: **"Failure to pay charges invoiced may result in discontinuance of service, the removal of all equipment and in the imposition of a late payment or service charge."** See Attachment B.

25.    The **Customer Terms and Conditions** also explicitly incorporate several additional documents (which documents are likewise posted together at the same url https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/.) Section 20 of the **Customer Terms and Conditions** states as follows (see Attachment B):

> **"Internet Online Agreement: The Customer agrees to adhere to the terms and conditions of any applicable RCN tariff, the RCN Internet Access Agreement, the RCN Internet Customer Guide, the RCN Acceptable Use Policy and the RCN High Speed Cable Modem Service Addendum. Certain of these documents can be found on the RCN home page (http://www.rcn.com) and/or on the RCN setup disk. By signing this Sales Order Form and by Customer's first use of RCN's Internet Service, Customer is deemed to have read and agreed to be bound by these documents."**

26.    The **RCN Internet Access Agreement** referenced therein is located at https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/internet-access-agreement/ and states that New Jersey law applies to the agreement between Defendants and the RCN customer.

27.    The **High Speed Cable Modem Service Addendum** (which is also referred to simultaneously on RCN webpages as the "High Speed Internet Service Addendum," e.g., see Section 1.1 of the addendum) is located at https://www.rcn.com/hub/about-rcn/policies-and-

disclaimers/high-speed-internet-service-addendum/. See Attachment C, **High Speed Cable Modem Service Addendum** printed out by Plaintiff's counsel from that url on August 6, 2020.

28. Section 3.2 of this **High Speed Cable Modem Service Addendum** (which is expressly incorporated into the Customer Terms and Conditions) contains the sole statement in any RCN contractual document or webpage as to the amount of any late fee. Section 3.2 states specifically that any late fee charged by RCN will be **"not more than $9.00 on any outstanding amount."** See Attachment C, **High Speed Cable Modem Service Addendum** printed out by Plaintiff's counsel on August 6, 2020, which states:

> **"RCN will send notification if your account becomes delinquent (30 days -past -due date listed on bill). Payment of the delinquent amount must be received by the deadline given in such notification to avoid interruption of Service. If payment is not received by the deadline given in such notification, a one time late fee of not more than $9.00 on any outstanding amount will be charged and your Service will still be subject to disconnection."** (emphasis added)

29. Despite and contrary to Defendants' contractual promise that any late fee on broadband internet service will be no more than $9.00, RCN has been imposing and charging a $15.00 late fee on broadband internet service since January 1, 2020. RCN lists this late fee on customer bills as the "Data Late Fee." Thus, each time a customer has been charged and paid the $15.00 "Data Late Fee," RCN has overcharged that customer by $6.00 (which is the difference between the $9.00 contractually promised maximum late fee amount, versus the $15.00 RCN actually charged).

30. Plaintiff Christian Reid, a resident of the Lehigh Valley region in Pennsylvania, is one of the hundreds of thousands of customers who has been a victim of this late fee overcharge scheme. Plaintiff Reid has been a subscriber to RCN's broadband internet service since 2016.

31. In April 2020, Plaintiff received his RCN bill dated April 3, 2020 which stated an overdue balance and imposed a **"Data Late Fee"** of **"$15.00"** See Attachment A, Plaintiff

9

sample bill at Page 3 of 4. Plaintiff paid that bill in full, which included payment for the $15.00 Data Late Fee.

32.     What happened to Plaintiff was not an isolated incident or an accident. Rather, it was a matter of intentional uniform policy in which Defendants imposed a late fee of $15.00 on the Class members, while at the very same time promising the Class in RCN's **"Terms and Conditions"** and other incorporated documents that any late fee would not exceed $9.00.

33.     In fact, tens of thousands of RCN customers have been overcharged $6.00 hundreds of thousands of times under this unlawful late fee scheme, which they have been forced to pay to avoid disruption of their internet service.

34.     RCN admitted in its Notice of Removal in this case that **"looking only at residential customers in the Lehigh Valley region (the region where Plaintiff lives and used his broadband Internet service), in excess of 50,000 of these Internet customers were charged and paid a $15 late fee since January 1, 2020."** (See Notice of Removal, Docket No. 1, at ¶ 10.)

35.     RCN further admitted that **"in the Lehigh Valley region alone, RCN Lehigh has records of over 150,000 instances of residential Internet customers being charged a $15 late fee on a monthly bill since January 1, 2020."** (Ibid. at ¶ 14.)

36.     In other words, in just the Lehigh Valley region (which is only one of the six metropolitan areas in which RCN serves its over 400,000 customers), and in just an eight-month period since January 1, 2020, RCN admits that it charged 50,000 customers an excess $6 in late fees an average of three times per person. Thus, in the Lehigh Valley region alone, these 150,000 instances of overcharging totaled approximately $900,000.00 in unlawful overcharges.

37.    The total overcharges to all RCN customers—including those customers in the other five metropolitan areas RCN serves—likely total millions of dollars of unlawful late fees paid by hundreds of thousands of customers.

38.    As a direct and proximate result of these unlawful actions by Defendants, Plaintiffs and the Class have been injured and have suffered an ascertainable loss of money.

39.    Pursuant to N.J.S.A. § 56:8-19, Plaintiff seeks actual damages, treble damages, attorney's fees and costs, and injunctive relief for himself and the Class.

40.    Plaintiff predicts that RCN will base much of their defense in this case upon a single notice of the $15.00 late fee which appeared in a single bill (the December 2019 bill) sent to customers, hidden in the last page of that bill. However, far from being a defense, this single buried notice is itself part of RCN's unlawful scheme. RCN inserted this hidden disclosure on the last page of that single bill, where an ordinary customer would not see it, in a bad-faith attempt to exculpate itself from legal liability for its deceptive and unlawful overcharging scheme.

41.    This defense by RCN fails for several reasons. First, pursuant to the terms of the **Customer Terms and Conditions** contract and its expressly incorporated documents, the terms (including RCN's express promise that RCN will charge "a one-time late fee of not more than $9.00") "constitute the entire agreement between the Customer and RCN" and can only be modified via an amendment to the **Customer Terms and Conditions** document itself. See Attachment B at Section 23. But the **Customer Terms and Conditions** continue to promise to this day that RCN will charge a late fee of not more than $9.00 and have not been amended to say otherwise. Thus, any other statement or disclosure of a late fee higher than $9.00—and especially a hidden disclosure on the last page of a single bill—cannot abrogate RCN's

11

contractual promise in its **Customer Terms and Conditions** to charge a late fee of no more than a $9.00. The customer bills are not part of, and cannot amend, the customer contract.

42.    Second, the notice of the $15.00 late fee in the December 2019 bill was also inadequate and inconspicuous notice as a matter of law and was contradicted by other language on that same bill. The second page of that December 2019 bill—like every RCN bill since then—explicitly referenced and provided a hyperlink to the current **Customer Terms and Conditions** and reminded the customer that the customer's service with RCN is governed by those terms and conditions—which includes the $9.00 late fee limitation. See Attachment A, RCN bill to Plaintiff Reid dated April 2020 which states on Page 2 of 4:

> **RCN Customer Terms & Conditions. When you utilize our services, we want to ensure you are aware of the terms & conditions you agree to. A copy of our current Customer Terms and Conditions are available to view online at: www.rcn.com/policies-and-disclaimers/customer-terms.**

43.    When an RCN customer follows the Customer Terms and Conditions link listed on the RCN bill, it forwards to https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/, which contains links to the "Contract Terms" including the **Customer Terms and Conditions** and the other documents expressly incorporated therein. Neither the RCN **"Customer Terms and Conditions"** found at that link, nor any other document or webpage incorporated in those terms and conditions, has ever authorized—or even referenced—a $15 dollar late fee on broadband internet service. To the contrary, as noted previously, the sole reference to the amount of any late fee found in the RCN **"Term and Conditions"** or in any other document or webpage incorporated therein and/or displayed at that link, continues to this day to be an express statement that a **"late fee of not more than $9.00 on any outstanding amount will be charged."**

44.    Thus, the sole notice that RCN gave about the $15.00 late fee (on the last page of the December 2019 bill) was a nullity, because it was directly contradicted by the statement on

12

Page 2 of that very same bill that the "current Customer Terms and Conditions" apply—and those terms expressly stated the late fee would be no greater than $9.00.

45.    Meanwhile, <u>every</u> bill for <u>every</u> month sent to <u>every</u> customer since December 2019 has continued to include the same statement on Page 2 reminding the customer of the **Customer Terms and Conditions** that **"you agree to"** and providing a link to the webpage containing **"[a] copy of our current Customer Terms and Conditions [that] are available to view online."**

46.    Ultimately, this single buried disclosure of the $15.00 late fee on the last page of the December 2019 bill is itself part of RCN's unlawful scheme. RCN inserted this hidden disclosure on the last page of that single bill—where an ordinary customer would not see it—in a bad-faith attempt to exculpate itself from legal liability for its deceptive and unlawful late fee overcharging scheme.

47.    This "money grab" unlawful late fee policy is particularly egregious given the events of the last several months with the COVID pandemic. Many Class members may have suffered unemployment and financial hardship and may be having difficulty paying their cable and/or internet bill on time—a situation which promises to provide Defendants with an even greater unearned and unlawful windfall in unauthorized late fee overcharges.

## CLASS ACTION ALLEGATIONS

48.    Plaintiff brings this action as a class action pursuant to Fed.R.Civ.P. 23, seeking damages, statutory penalties, and injunctive relief under New Jersey state law on behalf of himself and a proposed main class (hereafter "**Main Class**") consisting of:

> **All current and former RCN customers in the United States who received internet services from RCN and were charged and paid a $15.00 "Data Late Fee."**

13

49.    Plaintiff also brings this action as a class action pursuant to Fed.R.Civ.P. 23, seeking damages, statutory penalties, and injunctive relief under New Jersey state law on behalf of himself and a proposed sub-class (hereafter "**Lehigh Sub-Class**") consisting of:

> **All current and former RCN customers who received a bill which stated "All services, including telecommunications services, are provided by RCN Telecom Services (Lehigh) LLC" and who were charged and paid a $15.00 "Data Late Fee."**

50.    Excluded from the proposed Class and Sub-Class are Defendants, their officers, directors, and employees.

51.    The members of the Class and Sub-Class are so numerous that joinder of all members would be impracticable. The exact number and identities of Class and Sub-Class members are contained in RCN's records and can be easily ascertained from those records. At the current time, Plaintiff believes that the proposed Class is composed of greater than 100,000 persons and is informed that the proposed Sub-Class is composed of approximately 50,000 members.

52.    All claims in this action arise exclusively from the uniform policy described herein and the uniform language of Defendants' posted **Customer Terms and Conditions** and other uniformly worded documents provided by Defendants to Plaintiff and the Class and posted on Defendants' website.

53.    This action involves multiple common questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions include, but are not limited to, the following:

    a.    Whether New Jersey law applies to the claims of Plaintiff and the Class;

    b.    Whether Defendants employ a uniform policy of charging a $15.00 late fee to RCN's customers;

14

c.   Whether Defendants' **Customer Terms and Conditions**, including the documents incorporated therein, constitute a binding agreement between Defendants and the Class;

d.   Whether Defendants' **Customer Terms and Conditions**, including the documents incorporated therein, limit any late fee to $9.00;

e.   Whether Defendants' **Customer Terms and Conditions**, including the documents incorporated therein, permit a $15.00 late fee;

f.   Whether Defendants' uniform policy of charging a $15.00 late fee, when Defendants' own **Customer Terms and Conditions** expressly state that any late fee shall be no more than $9.00, is an unconscionable commercial practice and/or a false affirmative statement of fact in the sale of services in violation of N.J.S.A. § 56:8-2 of the CFA;

g.   Whether Defendants' bills, **Customer Terms and Conditions**, and other consumer notices which Defendants have offered and presented to Plaintiff and the Class violate clearly established rights of Plaintiff and the Class under New Jersey law, in violation of N.J.S.A. § 56:12-15 of the TCCWNA;

h.   Whether Defendants' uniform policy of charging a $15.00 late fee, when Defendants' own **Customer Terms and Conditions** state that any late fee shall be no more than $9.00, is a breach of the contract between Defendants and the Class; and

i.   Whether Plaintiff and the Class are entitled to an order for injunctive and declaratory relief barring Defendants from charging a late fee that is greater than allowed by contract or law.

54.   Plaintiff, like all Class members, is a current or former subscriber of RCN's broadband internet service who has been charged a $15.00 late fee by Defendants under the uniform policy described herein.

55.   The claims of Plaintiff and the Class all arise from that same uniform policy and are based on the same legal theories.

56.   Plaintiff seeks the same relief for himself as he seeks for every other Class member: refund of the unlawful late fees collected, statutory damages, and an injunction barring Defendants from continuing to collect any late fee higher than that allowed by contract or law.

15

57.     Plaintiff and his counsel will thoroughly and adequately protect the interests of the Class. Plaintiff has no actual or potential conflict with the Class and has no interests antagonistic to Class members' interests.

58.     Plaintiff has pursued this case vigorously and has retained counsel to represent himself and the proposed Class who are highly experienced in class action consumer litigation.

59.     A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. The amount of the alleged unlawful late fee was $15.00 and the complaint alleges that Defendants are contractually allowed to charge no more than a $9.00 late fee. Thus, the amount of the alleged unlawful overcharge is $6.00 per late fee imposed. That amount is too small to make individual lawsuits economically feasible and thus, without a class action, there would be no practical means of redressing Defendants' unlawful conduct.

60.     Moreover, individual litigation of these identical common issues would be duplicative and wasteful and would add administrative burden on the courts and increase the delay and expense to all parties and to the judicial system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge.

61.     By its conduct and omissions alleged in this complaint, RCN has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and/or declaratory relief is appropriate respecting the Class as a whole.

62.     Without the proposed class action, Defendants will likely retain the benefits of RCN's wrongdoing and will continue the complained-of uniform policy, which will result in further damages to Plaintiff and the Class.

16

## COUNT I

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### N.J.S.A. § 56:8-1, et seq.

63.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

64.    RCN's broadband internet service is a service which constitute "merchandise" within the meaning of N.J.S.A. § 56:8-1(c).

65.    Defendants, Plaintiff and all Class members are "persons" within the meaning of N.J.S.A. § 56:8-1(d).

66.    The CFA was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services. See Marascio v. Campanella, 689 A.2d 852, 857 (App.Div. 1997).

67.    The CFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes. See Furst v. Einstein Moomjy, Inc., 860 A.2d 435, 441 (N.J. 2004) **("The [CFA] is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.").**

68.    Indeed, **"[t]he available legislative history demonstrates that the [CFA] was intended to be one of the strongest consumer protection laws in the nation."** New Mea Const. Corp. v. Harper, 497 A.2d 534, 543 (App. Div. 1985).

69.    For this reason, the **"history of the [CFA] is one of constant expansion of consumer protection."** Kavky v. Herbalife Int'l of Am., 820 A.2d 677, 681-82 (App. Div. 2003).

17

70.     The CFA was intended to protect consumers "**by eliminating sharp practices and dealings in the marketing of merchandise and real estate.**" Lemelledo v. Beneficial Mgmt. Corp., 696 A.2d 546, 550 (N.J. 1997).

71.     Specifically, N.J.S.A. § 56:8-2 prohibits "unlawful practices" which are defined as:

> "**The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission … whether or not any person has in fact been misled, deceived or damaged thereby …**"

72.     The catch-all term "**unconscionable commercial practice**" was added to the CFA by amendment in 1971 to ensure that the CFA covered, inter alia, "**incomplete disclosures.**" Skeer v. EMK Motors, Inc., 455 A.2d 508, 512 (App. Div. 1982).

73.     In describing what constitutes an "**unconscionable commercial practice,**" the New Jersey Supreme Court has noted that it is an amorphous concept designed to establish a broad business ethic. See Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).

74.     In order to state a cause of action under the CFA, a plaintiff does not need to show reliance by the consumer.  See Varacallo v. Massachusetts Mut. Life Ins. Co., 752 A.2d 807 (App. Div. 2000); Gennari v. Weichert Co. Realtors, 691 A.2d 350 (N.J. 1997) (holding that reliance is not required in suits under the NJCFA because liability results from "**misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby'**").

75.     As stated by the New Jersey Supreme Court in Lee v. Carter-Reed Co., L.L.C., 4 A.3d 561, 580 (N.J. 2010): "**It bears repeating that the [NJCFA] does not require proof of**

18

reliance, but only a causal connection between the unlawful practice and ascertainable loss.”

76.     It is also not required that an affirmative statement be literally false in order to be considered deceptive and misleading under the CFA. Even a statement which is literally true can be misleading and deceptive in violation of the CFA. See Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 98 (D.N.J. 2011) (upholding a NJCFA claim where the defendant argued its written statement was literally true, holding **“the fact that the labels were literally true does not mean they cannot be misleading to the average consumer.”**).

77.     A CFA violation also does not require that the merchant be aware of the falsity of the statement or that the merchant act with an intent to deceive. See Gennari v. Weichert Co. Realtors, 691 A.2d 350, 365 (N.J. 1997):

> **“One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive… An intent to deceive is not a prerequisite to the imposition of liability.”**

78.     Nor is it a defense to a CFA claim that the merchant acted in good faith. See Cox v. Sears Roebuck & Co., 647 A.2d 454, 461 (N.J. 1994) (**“the Act [CFA] is designed to protect the public even when a merchant acts in good faith.”**).

79.     In the case at bar, Defendants’ policy of promising a late fee of no more than $9.00 and then imposing a late fee of $15.00 is a deceptive, misleading, and/or unconscionable commercial practice in the sale of goods in violation of N.J.S.A. § 56:8-2 for the reasons set forth herein.

80.     This policy involves, inter alia, both misleading affirmative statement of fact and an unconscionable commercial practice in that, as described herein, the documents expressly

19

incorporated into Defendants' **Customer Terms and Conditions** affirmatively promise that any late fee imposed will be no more than $9.00.

81.    As a direct and proximate result of these unlawful actions by Defendants, Plaintiffs and the Class have been injured and have suffered an ascertainable loss of money.

82.    Specifically, in violation of the RCN's contract with its customers, Defendants have charged Plaintiff and the Class an unlawful $15.00 late fee which Plaintiff and the Class are forced to pay through the threat of disruption of their internet service.

83.    Pursuant to <u>N.J.S.A.</u> § 56:8-19, Plaintiff seeks actual damages, treble damages, attorney's fees and costs, and injunctive relief for himself and the Class.

## COUNT II

## VIOLATION OF THE NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT, <u>N.J.S.A.</u> § 56:12-14, et seq.

84.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

85.    Plaintiff and Class members are "consumers" within the meaning of <u>N.J.S.A.</u> § 56:12-15.

86.    Defendants are each a "seller" within the meaning of <u>N.J.S.A.</u> § 56:12-15.

87.    RCN's broadband internet service is a **"service which is primarily for personal, family or household purposes"** within the meaning of <u>N.J.S.A.</u> § 56:12-15.

88.    The representations on RCN's website, including the **Customer Terms and Conditions** and all documents incorporated therein, as well as Defendants' monthly bills are all consumer "notices," "signs" and/or "warranties" within the meaning of <u>N.J.S.A.</u> § 56:12-15.

89.    By the acts alleged herein, Defendants have violated <u>N.J.S.A.</u> § 56:12-15 because, in the course of Defendants' business, Defendants have offered, displayed and presented written

20

consumer notices, signs and warranties to Plaintiffs and the Class which contained provisions that violated their clearly established legal rights under New Jersey state law, within the meaning of N.J.S.A. § 56:12-15.

90.    These clearly established rights of Plaintiff and the Class under New Jersey state law include the right not to be subjected to unconscionable commercial practices and false written affirmative statements of fact in the sale of services, as described herein, which acts are prohibited by the CFA, N.J.S.A. § 56:8-2.

91.    These clearly established rights of Plaintiff and the Class under New Jersey state law also include the right under basic New Jersey contract law not to be charged additional fees which are not authorized by the contract documents and are, in fact, prohibited by the contract documents.

92.    Plaintiff and each Class member are aggrieved consumers for the reasons set forth herein, and specifically because, inter alia, each was charged the unlawful $15.00 late fee.

93.    Pursuant to N.J.S.A. § 56:12-17, Plaintiff seeks a statutory penalty of $100.00 for each Class member, as well as actual damages and attorneys' fees and costs. See N.J.S.A. § 56:12-17, providing that a seller who violates the TCCWNA: **"shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs."** See also United Consumer Fin. Servs. Co. v. Carbo, 410 N.J. Super. 280, 310 (App. Div. 2009), affirming the trial judge's decision to award the $100.00 statutory penalty to each Class member under N.J.S.A. § 56:12-17 of TCCWNA, stating:

> **"[T]he $100 civil penalty is not unreasonably disproportionate when viewed in that context, whether it is considered with respect to an individual consumer or the 16,845 consumers whose contracts included the prohibited fee. We note that**

when assessing the constitutional reasonableness of punitive damage awards, courts are directed to consider and give 'substantial deference' to judgments made by the Legislature in fixing civil penalties. Nothing about the facts of this case or the numerosity of this class warrants a more searching evaluation of the reasonableness of awarding the civil penalty selected by the Legislature to each member of this class." (citation omitted).

## COUNT III

### BREACH OF EXPRESS CONTRACT

94.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

95.    Defendants themselves assert in their writings and webpage statements that a binding mutual contract exists between RCN and Plaintiff and the Class members, the terms of which are set forth in Defendants' internet posting of its **Customer Terms and Conditions** and the documents incorporated therein.

96.    Those contract terms expressly limit Defendants to charging "a one-time late fee of not more than $9.00" for broadband internet service.

97.    By the acts alleged herein, Defendants have breached that contract by imposing an unauthorized late fee of $15.00 on Plaintiff and the Class which is prohibited by the current contract.

98.    Plaintiff and members of the Class sustained damages as a result of Defendants' breaches of contract.

## COUNT IV

### NEW JERSEY UNIFORM DECLARATORY JUDGMENT ACT
### N.J.S.A. § 2A:16-51, et seq.

99.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

22

100.    Plaintiff and the Class need, and are entitled to, an order for injunctive and declaratory relief: (a) Declaring that RCN's policy of charging a $15.00 late fee is a violation of New Jersey law; (b) Enjoining RCN from charging a late fee that is greater than allowed by contract or law; (c) Ordering RCN to hold in constructive trust all excessive "Data Late Fee" payments (i.e., all amounts greater than $9.00 per late fee) received from the Class since January 1, 2020; and (d) Ordering RCN to perform an accounting of all such excessive "Data Late Fee" payments received.

101.    Plaintiff and the class members have a significant interest in this matter in that each has been or will be subjected to the unlawful policies alleged herein.

102.    Defendants are continuing to engage in the policy alleged herein.

103.    Plaintiff Christian Reid is a current customer and subscriber to Defendants' services, and thus remains under current threat of being charged the unlawful fee alleged herein.

104.    Based on the foregoing, a justifiable controversy is presented in this case, rendering declaratory judgment and injunctive relief appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, on behalf of himself and the proposed Class, Plaintiff requests that the Court order relief and enter judgment against Defendants as follows:

A.      Declare this action to be a proper class action, certify the proposed Class and Sub-Class, and appoint Plaintiff and his counsel to represent the Class and Sub-Class;

B.      Declare that Defendants are financially responsible for notifying all Class members of Defendants' deceptive and unconscionable business practices alleged herein;

C.      Find that Defendants' conduct alleged herein be adjudged and decreed in violation of the New Jersey laws cited above;

D.      Declare that Defendants' policy of charging a $15.00 late fee is a violation of New Jersey law;

E.      Enjoin Defendants from engaging in the misconduct alleged herein;

F.      Enjoin Defendants from charging a late fee that is greater than allowed by contract or law;

G.      Order Defendants to hold in constructive trust all excessive "Data Late Fee" payments (i.e., all amounts greater than $9.00 per late fee) received from the Class since January 1, 2020;

H.      Order Defendants to perform an accounting of all such excessive "Data Late Fee" payments received;

I.      Grant economic, compensatory, and statutory damages on behalf of Plaintiff and all members of the Class, to the maximum extent permitted by applicable law;

J.      Grant reasonable attorneys' fees and reimbursement of all costs incurred in the prosecution of this action; and

K.      Grant such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.


**DeNITTIS OSEFCHEN PRINCE, P.C.**

BY:

Stephen P. DeNittis (SD-0016)
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
(856) 797-9951
sdenittis@denittislaw.com

and

HATTIS & LUKACS
Daniel M. Hattis*
Paul Karl Lukacs*
400 108th Ave NE, Suite 500
Bellevue, WA 98004
(425) 233-8650
dan@hattislaw.com
pkl@hattislaw.com

* Pro Hac Vice application pending

Attorneys for Plaintiff and the Proposed Class

# Exhibit A

Page 1 of 4



**Service Location:**
BETHLEHEM, PA
Account PIN:

Customer Name: CHRISTIAN REID
Statement Date: 04/03/2020
Account Number:
Payment Due Date: 04/26/2020

### Reach RCN

| | |
|---|---|
| Website: | www.rcn.com |
| Telephone: | 1-800-RING-RCN (1-800-746-4726) |
| Visit: | 2124 Avenue C, Bethlehem, PA 18017 |

For a complete listing of payment locations please visit:
https://www.rcn.com/hub/help/locations-and-payment-centers/lehigh-valley-payment-centers/

### PREVIOUS CHARGES

| | |
|---|---|
| Previous Balance | 61.60 |
| **Payments Received** | 0.00 |
| **Past Due Balance - Due Now** | 61.60 |

### CURRENT CHARGES

| | |
|---|---|
| Bundled Services | 52.99 |
| High Speed Internet | 4.00 |
| One-Time Charges | 15.00 |
| Taxes, Surcharges & Fees | 4.61 |
| **Total Current Charges - Due 04/26** | 76.60 |

| **Total Amount Due:** | **$138.20** |
|---|---|

To avoid a late fee, please ensure the total amount due is received by the date listed on the statement.

### IMPORTANT MESSAGES



**THANK YOU FOR VOTING US**

"Best Customer Support"  |  "Best Tech Support"  |  "Most Likely to Recommend"

**Your support has made us a**
**5x Recognized Internet Service Provider**

A trademark of Ziff Davis, LLC. Used under license.
Reprinted with permission. © 2019 Ziff Davis, LLC.
All Rights Reserved.

RCN
IMAGINE BETTER

*Please detach and return below portion with your payment*



100 Baltimore Drive
Wilkes-Barre, PA 18702

*Electronic Service Requested*

### REMITTANCE SECTION

| Account Number: | | |
|---|---|---|
| **Past Due Balance:** | Due Now | 61.60 |
| Current Charges Due: | Due 04/26 | 76.60 |
| **Total Amount Due:** | | **$138.20** |
| Amount Enclosed: | $ | |

Please put your account number on your check and make payable to: RCN
We accept Visa, Mastercard, Discover, American Express, Check, Money Order or Cash. Cash payments are accepted at a Local Office, a payment center near you or at any Western Union location.

CHRISTIAN REID
BETHLEHEM PA

RCN
PO BOX 11816
NEWARK, NJ 07101-8116

4235001039064070103560013820



Customer Name:                          CHRISTIAN REID
Statement Date:                          04/03/2020
Account Number:
Payment Due Date:                        04/26/2020

All services, including telecommunications services, are provided by RCN Telecom Services (Lehigh) LLC (EIN 23-2472885)

**Telephone Customers**
Non-payment of the following telephone charges will not result in disconnection of your basic local service: Toll charges, 900 numbers, inside wiring, 911 surcharges, Line Features (i.e. Call Waiting, 3-Way Calling, Caller ID, etc.), Operator Charges, DACharges and Directory Advertising. Please be advised non-payment of all other telephone services will result in disconnection of your basic local telephone service.

**Returned Payments**
All checks returned due to non-sufficient funds will be resubmitted electronically. A maximum $30.00 administrative fee may be electronically debited. If at any time your check or automatic credit card payment is rejected or returned, RCN will consider this a denied payment. You will be charged a $25 denied payment fee, in addition to any late fees incurred as a result of the denied payment and all other amounts owed to RCN.

**Important information about your local service**
If you have a billing question or complaint or if you need a rate schedule, an explanation of how to verify the accuracy of your bill and an explanation of various charges, please call or write to RCN before the payment due date. You may contact an RCN billing representative by calling 1-877-726-2455, or you can write to us at RCN, 100 Baltimore Drive, Wilkes-Barre, PA 18701 or send email to support@rcn.com.

**RCN Privacy Policy**
RCN understands how important personal privacy is to you and we are committed to fully protecting your rights. We want our customers to be aware of what information RCN collects and how it is handled. You may view our current privacy policy online at: www.rcn.com/privacy-policy

**RCN Customer Terms & Conditions**
When you utilize our services, we want to ensure you are aware of the terms & conditions you agree to. A copy of our current Customer Terms and Conditions are available to view online at: www.rcn.com/policies-and-disclaimers/customer-terms

**AutoPay Customers**
Please visit www.rcn.com/customercenter or call 1.800.746.4726 (1.800.RING.RCN) if your method of payment changes, you have a new expiration date or replacement card, so we may update our records.

# Save Time and Save Trees
Sign-up for AutoPay and Paperless Billing Today

1. Go to **my.rcn.com** to set up your online account management.

2. Once logged in to your account, scroll down to the **AutoPay** section on the bottom left of your screen.

3. Select "**Enroll**" under AutoPay.  **Complete and submit the AutoPay form with your preferred method of payment.**

4. Scroll down to the bottom right of your screen to the **Paperless Billing** section.

5. Select "**Enroll**" under Paperless Billing.



Page 3 of 4



| | |
|---|---|
| Customer Name: | CHRISTIAN REID |
| Statement Date: | 04/03/2020 |
| Account Number: | |
| Payment Due Date: | 04/26/2020 |



**GO GREEN AND SAVE SOME GREEN.**
Sign up today for Auto-Pay and Paperless Billing and let RCN take care of the rest!

Visit us at my.rcn.com.

Get **RCN**

## BUNDLED SERVICES

This section displays the monthly charges and services included in your bundle.

| Date | Description | Amount |
|---|---|---|
| 04/04 - 05/03 | **A La Carte Internet Package** | 52.99 |
| | 50Mb/10Mb Internet Service, Modem Service, Primary Dynamic IP Address | |
| | | **$52.99** |

## HIGH SPEED INTERNET

This sections contains monthly data services/charges that are not part of a bundle.

| Date | Description | Qty | Amount |
|---|---|---|---|
| 04/04 - 05/03 | Cable Modem Rental | 1 | 4.00 |
| | Speed Increase to Mach 155 | 1 | 0.00 |
| | | | **$4.00** |

## ONE-TIME CHARGES

This section displays non-monthly charges. These are one time purchases, fees, or adjustments that have been made to your account.

| Date | Description | Amount |
|---|---|---|
| 04/03 | Data Late Fee | 15.00 |
| | | **$15.00** |

## TAXES, SURCHARGES & FEES

This section includes total taxes, fees, and surcharges on your monthly and non-monthly charges/credits. For an explanation, visit our website www.rcn.com/help.

| | Description | Amount |
|---|---|---|
| Internet | Network Access and Maintenance Fee | 4.37 |
| | State Sales Tax | 0.24 |
| | | **$4.61** |



## We're Prepared and Here for You!

We continue to pay close attention to the fast changing COVID-19/Coronavirus outbreak and take very seriously the critical role we play in keeping you and our communities connected during these unprecedented times. We also recognize the importance of stopping the spread of the virus and want to do all we can to keep our customers and employees safe as global, national and local efforts continue to evolve. To support those critical missions we want to share some tips and action steps we are taking to assure you that we continue to be here for you.

Reliability and Capacity of our Networks:
We have invested tens of millions of dollars upgrading and supporting our fiber networks. Our networks are designed, built and supported for capacity, speed, flexibility, and reliability. In addition, we have trained and certified local technicians at the ready should a local need arise. As this situation has unfolded we have undertaken incremental steps to ensure business continuity in our networks. You can be assured there is plenty of capacity to handle the extra load of working and learning from home and that we monitor that usage and capacity on a real time basis.

Interacting with us:
With the many government mandated closures around the country we want to be sure you can still interact with us in a safe and efficient manner. We have a host of digital self-service options including troubleshooting, bill payment, equipment returns, help & support, etc. Here are a few links to help get you to the right place:

- Managing Your Services: https://www.rcn.com/myrcn-account
- Account Login: https://my.rcn.com/login
- Ways to Pay Bill: https://www.rcn.com/hub/help/five-ways-to-pay-your-bill
- Equipment Returns: https://www.rcn.com/hub/customer-center/equipment-return
- Home Phone Info: https://www.rcn.com/hub/home-phone/features-just-for-you
- Voicemail Access: https://callmanager.rcn.com
- Other Help & Support: https://www.rcn.com/hub/help

If you choose to call us, please know that wait times may be a bit higher as some of our employees are dealing with COVID-19 related restrictions in their own communities.

Keeping you and our employees safe:
All of our employees have been provided a COVID-19/Coronavirus training program based on CDC guidelines to help them understand how to prevent the spread of the virus. This training incudes recognizing any illness or symptoms they may experience and to not come to work should they be experiencing those symptoms, while also recognizing symptoms and safety steps when dealing with others. We will continue to use our best efforts to stock our offices and service vehicles with hand sanitizers and our installers and technicians with vinyl gloves for added security as long as supplies last. In addition, we have increased the frequency of cleaning our lobbies and offices.

Supporting those financially disadvantaged by the Pandemic:
We are committed to keeping service connected to those disadvantaged by the impacts this pandemic is having on our customers and communities.

For those experiencing financial hardship as a result of recent events pertaining to COVID-19, special arrangements can be made available to keep your services active. Please reach out to us, we are here and ready to help by deferring payments and waiving late fees due to economic situations caused by COVID-19 coronavirus.

As you, your families or businesses take the necessary steps to stay healthy and mitigate the spread of this virus, know that each of us at RCN remain committed to doing the same while also ensuring that our networks perform at their best to keep all of us and our communities connected.

Lastly, thank you for being an RCN customer. We all appreciate it very much.

Sincerely,
RCN

# Exhibit B

 (/)

DC Metro



Bundles & Deals (dc-metro/bundles/)  |
My Account (hub/customer-center/myrcn-account/)

Support Feeding America (feeding-america/)

Find out how we are prepared for Coronavirus. Explore helpful online tools, entertainment options, and more » (hub/we-care/)

# Customer Terms and Conditions

# RCN Customer Terms and Conditions

1. **General:** Customer understands that services provided hereunder may be governed by certain Federal, state and local regulatory authorities and by certain terms and conditions of service contained in any applicable RCN tariff on file with such authorities In the event of any conflict between the terms conditions set forth herein and those provided under any government regulations or RCN tariff, in all instances, the terms and conditions set forth in the regulations or RCN tariff(s) shall prevail.

2. **Credit Check:** WRCN reserves the right to verify credit as a condition of provisioning video, telephony or internet services. Credit checks may not be required for video-only customers who have been current on their account for the last six (6) consecutive months Credit card verification and validation are required for all prospective RCN Internet Service customers (excluding cable modem customers who wish to be invoiced monthly for services).

3. **Payment of Charges:** Customer will be billed monthly in advance for services to be received, plus pro-rata charges, if any, for periods not previously billed. Customer will be billed monthly for pay per view or other services ordered where charges are based on actual usage or on orders placed during the previous month. Customer must pay all undisputed monthly charges as itemized on the RCN monthly invoice and/or notify RCN of disputed items within thirty (30) days of receipt or such other amount of time as is prescribed by law. Failure to pay charges invoiced may result in discontinuance of service, the removal of all equipment and in the imposition of a late payment or service charge. An additional charge may be imposed if a check is not honored due to insufficient funds. In the event collection activities are required, an additional collection charge may be imposed. RCN shall furnish to Customer upon request, a list of its rates and charges. Subject to applicable law, RCN shall issue a credit or refund for any billing error that is brought to its attention by Customer within sixty (60) days of bill. The issuance of a credit or refund, if any, for errors brought to RCN's attention beyond sixty (60) days will be at RCN's sole discretion, or as otherwise required by applicable law.

4. **Special Construction:** If Customer requests a change in location of all or part of the Service prior to the completion of construction or installation, Customer agrees to pay RCN all reasonable additional costs incurred from Customer change in location.

5. **RCN Property:** All equipment, including but not limited to, cables, wires, amplifiers, cable modems, cable boxes and remotes delivered to and/or installed in the Customer's home by RCN ("Equipment") remains the property of RCN. Customer must return all equipment immediately upon termination of service. Failure to do so will result in a charge to be determined with reference to RCN's then current schedule of charges, which amount shall be due immediately. Customer agrees to pay such charges whether the Equipment is lost (through theft or otherwise) or destroyed, and in the case of a converter, the potential cost to RCN of misuse of the

converter(s) upon Customer's loss of control over it. Any collateral form of payment Customer provides to RCN will be used to cover any and all equipment charges.

6. **Disruption of Service:** In no event shall RCN be liable for any failure or interruption of program transmissions or service resulting in part or entirely from circumstances beyond RCN's reasonable control. Subject to applicable law, credit will be given for qualifying outages. **RCN shall not be liable for any direct, indirect, consequential, incidental, special, exemplary or punitive damages from whatever cause.**

7. **Repair of RCN Equipment:** RCN will respond to all requests for system repair and will repair and/or replace defective Equipment in Customer's home. RCN is not responsible for the maintenance or repair of Customer provided equipment. A service charge may be imposed if damage to RCN Equipment due to negligent use or abuse or if no fault is discovered in RCN's system or Equipment. RCN makes no warranties with respect to Equipment or service provided by RCN and disclaims any and all implied warranties, including warranties of merchantability or fitness for a particular purpose or use. All other Equipment installed by RCN, including but not limited to the converter(s) indicated on the face side, any security devices of amplification equipment and all remote control units provided to Customer by RCN shall at times remain the property of RCN. Customer agrees not to tamper with same and to return RCN's property upon termination of Service. In order to ensure compliance with applicable laws and performance standards, Customer agrees that equipment installed by RCN shall not be serviced by anyone other than RCN's employees or agents. Customer shall not connect or attach directly or indirectly, any additional television(s) or any other electrical, mechanical or other devices to any such equipment without the prior written approval of RCN. Should any device or any facility purchased by Customer not comply with the technical specifications established by the Federal Communications Commission, including but not limited to those relating to signal leakage, RCN reserves the right to discontinue service until such non-compliance is cured by Customer.

8. **Force Majeure:** Neither party shall be liable for any delay or failure of performance or Equipment due to causes beyond its control, including but not limited to: acts of God, fire, flood, explosion or other catastrophes; any law, order, regulation, action or request of a Federal, state or local governmental authority or of any civil or military authority; national emergencies, unavailability of rights-of-way or materials; or strikes, lock-outs, work stoppages or other labor difficulties.

9. **Customer Property:** RCN assumes no responsibility for the condition or repair of any Customer provided equipment. Customer is responsible for the repair and maintenance of Customer provided equipment. RCN is not responsible or liable for any loss or impairment of reception of RCN's service due in whole or in part to a malfunction or defect in Customer provided equipment.

10. **Taxes:** Customer agrees to pay all Federal, state and local taxes, including but not limited to, all sales and excise taxes imposed or levied on or with respect to service,

equipment, and installation or placement charges incurred with respect to the same.

11. **Reproduction or Programs:** Customer agrees that the programs provided by RCN will be utilized solely for Customer's personal, non-commercial use and will not be duplicated except as may be permitted by applicable law.

12. **Care of RCN Property:** Customer agrees that neither Customer nor any other person (except RCN's authorized personnel) will open, tamper with, service, make any alterations to or remove any Equipment from its point of initial installation. Any altering, tampering, removal or use of the Equipment which causes the receipt of services without authorization constitutes theft of service and is prohibited.

13. **Access to Customer Premises:** Customer warrants that Customer is the owner of, or a tenant in, the service address indicated on the face side hereof and has authority to enter into this Agreement. Customer agrees to indemnify and hold RCN harmless from any and all claims resulting from a breach of this warranty. Customer agrees to provide RCN's representative with access at reasonable times to Customer's premises to inspect and maintain the Equipment supplied by RCN and, upon the termination of service, to remove the same from the premises. RCN's failure to remove its property shall not be deemed an abandonment thereof, except as provided by law.

14. **Assignment or Transfer:** This Agreement and the Equipment supplied by RCN are not assignable or otherwise transferable by Customer. Customer shall notify RCN of any change of occupancy or ownership of the premises immediately upon such transfer of ownership or tenancy.

15. **Termination of Service:** Customer may terminate an RCN service at any time by giving prior notice to RCN. This Agreement and the Service provided hereunder may be terminated (a) by RCN at any time without prior notice (i) if the Customer fails to comply in full with all the terms herein; or (ii) if RCN loses the right or ability to use public rights-of-way necessary to serve Customer, or (b) by Customer, at any time, upon notice to RCN, provided all RCN Equipment (including all converters and remote control units) are made available by Customer for removal by RCN ore are returned immediately to RCN by Customer. All Equipment must be returned immediately and outlets disconnected to avoid additional or continuing charges. In the event of termination by RCN, any restoration of service shall be solely at RCN's discretion and on such terms as RCN shall determine are necessary to resume service on a commercially reasonable basis.

16. **Breach of Agreement:** If Customer breaches this Agreement or fails to abide by RCN's rates, rules and regulations, RCN, at its option, may discontinue the Service and remove the Equipment. Customer shall pay reasonable collection and/or attorney's fees to RCN in the event that RCN shall find it necessary to enforce collection or to preserve and protect its rights under this Agreement.

17. **Programming:** All programming, program services, program packages, number of channels, channel allocations and broadcast channels are subject to change in accordance with applicable law. Customer acknowledges and agrees that RCN has the right at any time to preempt, without prior notice, specific programs or services advertised as available to Customer and to determine what substitute programming, if any, shall be made available. RCN may, at its discretion, make additions, deletions or modifications to its current program line-up without liability to Customer. RCN shall not be liable for failure to deliver any programming, except to the extent provided in paragraph 3 hereof.

18. **Rates:** Rates for the installation of service or Equipment and rates for programming or other services are subject to change in accordance with applicable law.

19. **Programming Disclaimer:** RCN assumes no liability for any program or information distributed over the cable system unless locally produced by RCN. RCN shall not be responsible for any products, merchandise or prizes promoted on or purchased through the use of the cable system, unless such products, merchandise or prizes are provided directly by RCN.

20. **Internet Online Agreement:** The Customer agrees to adhere to the terms and conditions of any applicable RCN tariff, the RCN Internet Access Agreement, the RCN Internet Customer Guide, the RCN Acceptable Use Policy and the RCN High Speed Cable Modem Service Addendum. Certain of these documents can be found on the RCN home page (http://www.rcn.com (/)) and/or on the RCN setup disk. By signing this Sales Order Form and by Customer's first use of RCN's Internet Service, Customer is deemed to have read and agreed to be bound by these documents.

21. **Internet Local Access Number:** RCN will not be responsible for any telephone charges incurred while using the internet. Customers are responsible for verifying that their access number is a local telephone call.

22. **VoIP 911 Dialing:** Under certain circumstances, RCN's Voice-Over-Internet-Protocol ("VoIP") service (where applicable) will not support Traditional 911 or Enhanced 911 (E911) dialing access to emergency services. The address associated with an E911 call on RCN's VoIP service is specific to Customer's original service location only. Movement of the VoIP equipment from the original service location to a new service location may result in a mistaken identification of the E911 call as having come from the original service location. Furthermore, 911 dialing on RCN's VoIP service will not function in the event of a power failure or improper network connection and/or function. Customer understands and acknowledges that RCN, its affiliates, subsidiaries, parent companies and network service providers, will have no liability whatsoever with respect to 911 dialing on RCN's VoIP service.

23. **Entire Agreement:** This Service Order, together with the terms and conditions contained herein, constitute the entire agreement between the Customer and RCN. No undertaking, representation or warranty made by any agent or representative of RCN in connection with the sale, installation, maintenance or removal of RCN's

services shall be binding on RCN except as expressly included herein. RCN may amend this Agreement on thirty (30) days prior notice to Customer. Customer's election to continue receiving the Service thereafter shall be deemed to constitute Customer's acceptance of such amendment.

24. **911 Assurance and eMTA Battery Backup:** Your RCN telephone service is provided via a telephone modem at your location. This device requires electrical power at your location in order to provide service. In the event of a power outage, telephone service, including access to 911, will not work unless you have a back-up power source. Note that phone service may still be unavailable due to other circumstances such as downed poles/wires, outages or other issues affecting RCN's network. Currently, RCN will provide an 8-hour internal back-up battery for RCN-supplied telephone equipment at no charge upon request from the customer. A 24-hour back-up battery is also available for purchase from RCN. RCN supplied batteries are rated to provide 8 – 12 or [24] hour of standby time when new, respectively. Active use of the telephone line will reduce the amount of standby time provided by the battery; cold temperatures and age may also reduce standby time. Back-up batteries should be kept installed in the equipment, and annually be tested and checked for signs of deterioration or leakage. Batteries may be obtained at the time of install or by calling 800.RING.RCN (800.746.4726). This policy may be subject to change at a future date. Customers may also utilize an external UPS (Uninterruptable Power System) to provide or extend telephone backup time. These systems are commonly available through electronics and office supply retailers. External UPS systems should be rated at 300 Watts or higher in order to provide 8 hours of standby time. Please refer to the HELP section of the RCN website for further information.

25. **Customer Privacy Notice:** As a customer of cable services, you are entitled under Federal law to know the following:

    a. In order that we may provide reliable, quality service to you, and to make sure that you are being billed for the services you receive, we keep regular business records relating to you as a Customer. These records contain personally identifiable information which may include your name, spouse's name, address, phone number, identification numbers (such as driver's license and/or social security number), credit card information as required for payment of services, records relating to deposits (if any), cable service and installation agreements, work orders, billing and payment information, service options you have chosen, the number of television sets in your household connected to our service, and records relating to service repairs, maintenance and complaints at your address. Such information is collected and used for billing and collection purposes, programming, marketing and other cable-related aspect s of providing, auditing and maintaining your service, and to keep legal, financial, accounting, tax, property and other records as may be required by RCN's cable television franchise or authorization.

    b. Except as otherwise noted, all personally identifiable information is used only for the normal business purposes associated with offering and rendering

cable service to you. It is accessible as often as needed (which could be on a daily basis ) to cable system employees, contractors, building owners or their agents, and installation and sales agents, to install, market, sell, provide and audit cable service and to measure viewer ship and Customer satisfaction; businesses which provide services to us (such as our accountants, attorneys and billing and collection services); potential purchasers in connection with system sale; tax professionals and bookkeepers to compile records and file reports; outside auditors to verify records; program guide providers; where applicable, programming services for marketing and audit purposes; and representatives of local authorities to demonstrate compliance as may be appropriate, subject to applicable law. We may also electronically test the system from time to time to determine whether you are being properly billed for the cable service you are receiving. The frequency of disclosure varies according to business needs.

c. We will maintain information about you as long as we provide service to you and for a reasonable time thereafter in order to comply with applicable laws and for related business activities, such as follow-up billing, tax and accounting purposes. The personally identifiable information will be destroyed when it is no longer needed for the cable-related activities for which it was collected.

d. We will consider the information we keep to be confidential, and may under Federal law disclose it to a third party only if (i) you consent in advance in writing such as through this disclosure or electronically; (ii) disclosure is necessary to render cable service or other services we provide to you and related business activities (as described in paragraph b. above; (iii) disclosure is required pursuant to a court order and you are first notified of and have an opportunity to contest that order; or (iv) in accordance with paragraph e. below.

e. From time to time, we may also disclose your name and address for mailing lists and other purposes if we have given you prior opportunity to prohibit or limit such disclosure and you have not done so. We will not disclose the extent of your viewing or use of a particular service or the nature of any transaction you make over the cable system, but we may disclose that you are among those who subscribe to a particular service. If you wish to remove your name from such lists or limit the use of your name at any time, please provide written notice to us at the address listed on the face side hereof.

f. You have the right to inspect and request correction of any error in our records that contain information about you, and to enforce your rights by a civil action under Federal law, in addition to other remedies that may be available to you. If you wish to inspect your records, please contact us by mail or telephone, giving us a reasonable period of time to locate and, if necessary, prepare the information for review, and to arrange an appointment during regular business hours.

g. If a customer payment is returned for insufficient funds, the customer authorizes the electronic re-presentment of their payment and the charging of

a processing fee of the lesser of $ 30 or the highest rate allowed by law. The processing fee related to the electronic re-presentment is in addition to the RCN charge applied to your account for insufficient funds of $25 (or the highest rate allowed by law). The customer may also be responsible for other costs associated with collection and any applicable taxes from the sale of RCN services.

**NOTICE: IT IS UNLAWFUL TO ALTER OR TAMPER WITH ANY DEVICE BELONGING TO RCN IN ORDER TO RECEIVE, INTERCEPT OR ASSIST IN RECEIVING OR INTERCEPTING, ANY COMMUNICATION SERVICE OFFERED IVER THE RCN NETWORK SYSTEM UNLESS SPECIFICALLY AUTHORIZED TO DO SO BY LAW OR AN RCN REPRESENTATIVE. VIOLATORS ARE SUBJECT TO FINES AND/OR IMPRISONMENT.**



I have been with RCN for over 10 years, and its customer service is why I have stayed for so long. Keep up the great work!

Pamela, Norwood, PA


(hub/max-your-speed/rcn-wins-pcmag-readers-choice-award/)
**2019**
Fastest
Internet Providers


(hub/max-your-speed/rcn-wins-pcmag-readers-choice-award/)
Award
Winning


(hub/max-your-speed/rcn-wins-pcmag-readers-choice-award/)
**Readers Choice**
5 Time
Recognized


(hub/max-your-speed/rcn-wins-pcmag-readers-choice-award/)
**2016**
Top Consumer
Recommended

Reprinted from www.pcmag.com with permission. © 2019 Ziff Davis, LLC. All Rights Reserved.

(hub/customer-center/customer-pledge/)

## Switching Is Easy

With same-day installation, two-hour service windows and 24/7 customer support, switching to RCN has never been easier.

**Read Our Pledge (hub/customer-center/customer-pledge/)**

## CONNECT WITH US

   

(https://twitter.com/RCNconnects)

**Internet (dc-metro/high-speed-internet/)**

Features & Plans (https://www.rcn.com/dc-metro/high-speed-internet/#shop)

WiFi For Your Home (hub/wifi/)

Internet Security (https://www.rcn.com/dc-metro/high-speed-

**Digital TV (dc-metro/digital-cable-tv/)**

Features & Plans (dc-metro/digital-cable-tv/#shop)

Equipment Powered by TiVo (dc-metro/digital-cable-tv/equipment/)

Channel Lineups (dc-metro/digital-cable-tv/channel-lineups/)

**Phone (dc-metro/phone/)**

Features & Plans (dc-metro/phone/#shop)

International Calling (dc-metro/phone/#international)

internet/#networking-security)

Devices & Equipment (https://www.rcn.com/dc-metro/high-speed-internet/internet-equipment/)

Maximize Your Speed (hub/max-your-speed)

Smart Home (smart-home/)

On Demand (dc-metro/digital-cable-tv/video-on-demand-movies/)

Pay-Per-View (dc-metro/digital-cable-tv/pay-per-view/)

HBO MAX™, Cinemax®, SHOWTIME®, & STARZ® (dc-metro/digital-cable-tv/premium-channels/)

Premiere Channel Packages (dc-metro/digital-cable-tv/premiere-packs/)

Sports Packages (dc-metro/digital-cable-tv/cable-sports-packages/)

International Channels (dc-metro/digital-cable-tv/international/)

Entertainment Zone (hub/entertainment-zone/)

TV on the Go (hub/tv-on-the-go/)

## For Customers (hub/customer-center/)

MyRCN (hub/customer-center/myrcn-account/)

Webmail (https://www.rcn.com/hub/customer-center/webmail/)

Contact Us (hub/customer-center/contact-us/)

For Business Customers (https://www.rcn.com/business)

Help, Guides & Support (hub/help/)

## Where We Service (hub/about-rcn/where-we-service/)

Boston (hub/about-rcn/where-we-service/boston-service-areas/)

Chicago (hub/about-rcn/where-we-service/chicago-service-areas/)

Washington DC Metro (hub/about-rcn/where-we-service/dc-metro-service-areas/)

Lehigh Valley (hub/about-rcn/where-we-

Refer a Friend
(hub/customer-
center/referafriend/)

Equipment Returns
(hub/customer-
center/equipment-return/)

service/lehigh-valley-
service-areas/)

New York City (hub/about-
rcn/where-we-service/new-
york-service-areas/)

Philadelphia (hub/about-
rcn/where-we-
service/philadelphia-
service-areas/)

---

About RCN (hub/about-rcn/)   |   Careers (hub/about-rcn/careers/)   |

Contact Us (hub/customer-center/contact-us/)

Sitemap (sitemap/)   |   Policies & Disclaimers (hub/about-rcn/policies-and-disclaimers/)   |

Privacy Policy (hub/about-rcn/policies-and-disclaimers/privacy-policy/)   |

DMCA Policy (hub/about-rcn/policies-and-disclaimers/dmca-policy-and-procedure/)   |

DMCA FAQs (hub/about-rcn/policies-and-disclaimers/dmca-policy-and-procedure/dmca-faqs/)

©2020 RCN Telecom Services, LLC. All Rights Reserved.

# Exhibit C


(/)

DC Metro





Bundles & Deals (dc-metro/bundles/)   |
   My Account (hub/customer-center/myrcn-account/)

Support Feeding America (feeding-america/)

Find out how we are prepared for Coronavirus. Explore helpful online tools,
entertainment options, and more » (hub/we-care/)

# High-Speed Internet Service Addendum

# High Speed Service Addendum

Following is the RCN High Speed Internet Service Addendum to the online RCN Internet Access Agreement (/dc-metro/../customer/internet_access_agreemnt.php).

This Service Addendum sets forth the terms and conditions under which RCN Internet will provide RCN's High Speed Internet Service to you, the customer.

**1. The Service**

1.1. RCN will provide High Speed Internet Service (the "service") to a single computer connection in the customer residence. The Service is provided in accordance with the provisions of the online RCN Internet Access Agreement (including RCN's Online Policies ) and this RCN High Speed Cable Modem Service Addendum. Rider A

RCN will provide: (i) A coaxial cable connection provided at the End-User's residence to an End-User provided Windows-based PC or Apple Macintosh computer which meets the End-User Equipment Requirements set forth by RCN; (ii) Use of a cable modem provided by RCN; (iii) End-User Instructions. I, including, operating instructions, online help and telephone support. High Speed Internet access; includes a single End-User IP connection; integrated Software Package, I, including Web browser, TCP/IP stack, electronic mail, FTP, Telnet and Newsgroups; full service installations at End-User designated residence, cable modem and internal and external cabling, if needed End-User orientation - including setting electronic mail password, web browsing, and applications testing; 24 hour, seven days a week Help Desk Support Services accessible via online help or telephone support (toll-free number); electronic mail, and Frequently Asked Questions - FAQs.

**2. General Subscriber Obligations**

2.1. You, (the RCN Cable Modem Subscriber), agree to this addendum on behalf of yourself and any person who accesses the Service through your computer, under your screen name or password or through the RCN cable outlet in your home. You assume responsibility to ensure that all such other users understand the RCN Internet Access Agreement and this Addendum and comply with its terms. You will, at your own expense, obtain any and all consents, rights and authorizations necessary for the installation and use of the Service and equipment.

2.2. The Service is intended for use by you at a specific authorized location. You may not transfer your subscription or your rights and obligations under this Addendum to any other person or to yourself at a new residence. Your Service will be terminated should RCN be notified that you are no longer an authorized End-User.

**3. Payment Terms**

3:1. You agree to pay an installation fee and a monthly recurring charge for the Service. If you pay by credit card, you expressly authorize RCN to charge the credit card account number associated with your account for any Access Service charges that accrue from month to month and such authorization shall remain in effect until you terminate your authorization in writing. The schedule of fees and charges is set forth in the equipment and installation agreement, of which is incorporated into this Addendum and made a part hereof. You agree to pay all applicable federal, state and local fees or taxes.

3.2. RCN reserves the right to change the amount of fees and charges from time to time at its discretion and upon reasonable notice to you. Installation fees and any applicable equipment charges are due along with payment of the first monthly charge. Monthly charges are payable in advance. RCN will send notification if your account becomes delinquent (30 days -past -due date listed on bill). Payment of the delinquent amount must be received by the deadline given in such notification to avoid interruption of Service. If payment is not received by the deadline given in such notification, a one time late fee of not more than $9.00 on any outstanding amount will be charged and your Service will still be subject to disconnection. RCN may charge a reasonable service fee for all returned checks and bank card or charge card chargebacks.

3.3. If you discontinue the Service or are disconnected, you agree to pay a reconnect charge before reconnection.

3.4. You will be responsible for all expenses (including reasonable attorney's fees) incurred by RCN in collecting any unpaid amounts due in accordance with this Agreement.

**4. Charges For Online Services Internet Transactions**

4.1. Through use of the Service, you may access certain High Speed Internet, products, and services from entities other than RCN, for which there is a charge, including certain online services such as America Online and CompuServe.

4.2. You agree that all such fees or charges for online services, products, or high speed Internet access are your sole responsibility and not the responsibility of RCN.

4.3. You are also advised that you are solely responsible for protecting the security of your credit card and other methods of payment from unwanted or unauthorized charges for Internet based transactions.

4.4. RCN does not endorse or warranty any third-party products, services, or content that are distributed, provided, advertised, or otherwise made available over the service.

**5. End-User Back-Up Recommendation**

You acknowledge and accept that the installation, use, inspection, maintenance, repair and removal of the RCN equipment may result in service outages or potential damage to your hardware or software if you do not back-up all existing computer files by copying them to another storage medium prior to such activities, You will assume all associated risks of your failure to do so.

FOR THESE AND OTHER REASONS, RCN RECOMMENDS THAT YOU BACK-UP ALL FILES PRIOR TO INSTALLATION.

**6. Installation and Access**

RCN will schedule one or more installation visit with you. You must be present during installation. Following installation, you will provide RCN with reasonable access to the premises to inspect, repair, and maintain RCN's equipment. Rider B

Upon termination of your purchase of the Service, you will return any RCN equipment to an RCN designated location as provided for in Section 9.

**7. Service and Performance**

7.1. RCN will make commercially reasonable effort to assure that the Service is available to you twenty-four (24) hours per day, seven days per week. You acknowledge and agree that it is inevitable, however, that there will be interruptions of service. When possible, RCN will post online advance notice of planned outages for network or system upgrades. RCN shall take reasonable measures to minimize unplanned service interruptions. Rider C

7.2. The Service provided is an ethernet-like IP service over a shared bandwidth connection, and users will contend for bandwidth. RCN will undertake reasonable efforts at network management, traffic analysis, operational procedures and user policies that ensure appropriate bandwidth at all times for as many customers as possible. Rider D

7.3. For RCN cable television service customers, the service should not affect the video programming portions of your cable television service, If applicable. If you experience problems with your video programming services, contact your local RCN office in the usual manner. HOWEVER, RCN EXPRESSLY DISCLAIMS ALL LIABILITY ARISING FROM OR RELATING TO INTERRUPTIONS IN SUCH VIDEO PROGRAMMING SERVICES.

7.4. High Risk Activities - The Service is not fault tolerant and is not designed or intended for use in situations requiring fail-safe performance or in which an error or interruption in the Service could lead to severe injury to business, persons, property or environment ("High Risk Activities"). Such High Risk Activities may include, without limitation, vital business or personal communications, or activities where absolutely accurate data or information is required. SUBSCRIBER EXPRESSLY ASSUMES THE RISKS OF ANY DAMAGES RESULTING FROM HIGH RISK ACTIVITIES Rider E

**8. Support and Maintenance**

8.1. RCN will provide customer support, which can be accessed by telephone or by electronic mail. Support will be provided, as set forth in Section 8.2 below, for use of the Service via the hardware and software requirements set forth by RCN and via the software provided by RCN. RCN does not provide support for the Service when you use other hardware or software. The telephone numbers and electronic mail addresses for support services are available both in printed materials and online.

8.2. If your use or modification of the software, hardware, or equipment supplied by RCN requires a visit to your residence for repair or correction, RCN reserves the right to charge you for the visit and any labor required to correct the situation. RCN does not support in any manner, nor will RCN undertake to correct or repair software, hardware or equipment, which it does not supply. RCN's hardware support and service is limited to the RCN High Speed Cable Modem and its Ethernet interface as specified herein.

## 9. Ownership and Use of Equipment and Software

9.1. An RCN High Speed Cable Modem supplied and installed by RCN under this Addendum, shall at all times remain the property of RCN and must be returned to RCN, in good condition, at the termination of service. You will use reasonable care to avoid damaging, and will not move, relocate, alter, sell, lease, assign, encumber or otherwise tamper with the equipment. If the equipment is not returned to RCN or is not returned in good condition in RCN's sole judgment within fifteen (15) days of service deactivation you will be charged $500.00 for the modem replacement.

9.2. RCN grants you a limited, non-exclusive license to use the software provided and installed by RCN for use in connection with the Service only. You may make one copy for archival purposes only. The license terminates upon termination of this Agreement, disconnection or discontinuance of the Service. Upon termination, discontinuance or disconnection will promptly destroy all such software and any copy you have made.

9.3. You shall not modify, decompile or reverse engineer the RCN provided software for any purpose.

## 10. Network Interface Card

A suitable and functional network interface card, if not already owned and installed by you, may be supplied and installed by RCN or an RCN authorized contractor in the home computer under this Agreement. Such card shall be purchased by you and become your property. The card will remain your property following termination of this Agreement and RCN does not undertake to remove it from your computer upon termination. Technical support for purchased network interface cards is limited to software (driver) support. You may be able to obtain additional support from the manufacturer of the network interface card. However, RCN disclaims all liability arising from or relating to such manufacturer support.

## 11. End-User Use

11.1. You may not resell, share, or otherwise distribute the Services or any portion thereof to any third party without the written consent of RCN. For example, you cannot provide Internet access to others through a dial up connection, host shell accounts over the Internet, provide E-mail or news service, or send a news feed. The Service does not provide the type of security, upstream performance and total downstream throughout guarantees typically associated with commercial use and you are not authorized to make any commercial use of the Service. Rider F

11.2. RCN will provide you with a dynamic IP connection as a component of the Service. You agree not to alter, modify, or tamper with the dynamic IP connection or those of any customer on the system. You also agree not to use any software on, or in conjunction with, any computer or network device connected to the Service which provides for static IP connections. If applicable, RCN will take back the dynamic IP connection upon disconnection, discontinuance, or termination of the Service.

11.3. RCN will install the Service connection only to a single computer connection in a residence. At this time, RCN does not install home LANs, and we RCN cannot answer technical support calls, regarding their usage, configuration or problem solving. RCN reserves the right to prohibit the the use of such LANs in connection with the RCN High Speed Internet Service, in RCN's sole discretion, if we perceive any risk of service degradation for any customer or any part of our network, or for any other reason. In addition, RCN assumes no responsibility whatsoever and expressly disclaims all liability for any service degradation caused by the use of the Cable Modem service with a home LAN.

**12. Limitation of Liability; No Warranties**

PLEASE READ THIS SECTION CAREFULLY, IT CONTAINS DISCLAIMERS OF WARRANTIES AND LIMITATIONS OF LIABILITY, MADE ON BEHALF OF RCN AND ALL OF ITS AFFILIATES.

12.1 DAMAGE TO YOUR HOME COMPUTER.

EXCEPT IN CASES OF GROSS NEGLIGENCE ON THE PART OF RCN, RCN ASSUMES NO RESPONSIBILITY AND EXPRESSLY DISCLAIMS ALL LIABILITY FOR ANY DAMAGE TO, OR LOSS OR DESTRUCTION OF YOUR COMPUTER OR OTHER HARDWARE OR ANY RCN HIGH SPEED CABLE MODEM. IN NO EVENT SHALL RCN's MAXIMUM LIABILITY FOR SUCH DAMAGE, LOSS OR DESTRUCTION EXCEED $2,600.00.

12.2. DAMAGE, LOSS OR DESTRUCTION OF SOFTWARE FILES AND/OR DATA.

RCN ASSUMES NO RESPONSIBILITY AND EXPRESSLY DISCLAIMS ALL LIABILITY WHATSOEVER FOR ANY DAMAGE TO, OR LOSS OR DESTRUCTION OF ANY OF YOUR SOFTWARE, FILES, DATA, OR PERIPHERALS WHICH MAY RESULT FROM YOUR USE OF THE SERVICE, OR FROM THE INSTALLATION, MAINTENANCE, OR REMOVAL OF THE SERVICE, EQUIPMENT OR SOFTWARE PROVIDED BY RCN HEREUNDER. RCN DOES NOT WARRANT THAT ANY DATA OR FILES SENT BY OR TO YOU WILL BE TRANSMITTED IN UNCORRUPTED FORM OR WITHIN A REASONABLE PERIOD OF TIME.

12.3. NO WARRANTIES/LIMITATION OF LIABILITY.

RCN MAKES NO WARRANTY, EXPRESS OR IMPLIED AS TO THE EQUIPMENT, SOFTWARE OR THE SERVICE, INCLUDING ANY WARRANTY OF MERCHANT ABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT, AND ALL EQUIPMENT, SOFTWARE, AND SERVICES ARE SUPPLIED "AS IS". IN NO EVENT SHALL RCN BE LIABLE FOR ANY DIRECT, INDIRECT OR CONSEQUENTIAL LOSSES OR DAMAGES ARISING IN ANY MANNER OUT OF THE INSTALLATION, MAINTENANCE, FAILURE, REMOVAL, OR USE OF THE EQUIPMENT, SOFTWARE OR SERVICE PROVIDED BY RCN HEREUNDER. NO REPRESENTATION, COMMUNICATION OR STATEMENT, WHETHER IN WRITTEN OR ORAL FORM, BY ANY RCN EMPLOYEE OR AGENT SHALL BE CONSTRUED TO ADD TO OR MODIFY ANY REPRESENTATIONS OR WARRANTIES HEREIN. RIDER G

**13. No Liability For Unauthorized Access**

13.1. RCN treats private communications on or through its network as strictly confidential and does not access, use, or disclose the contents of private communications, except in limited circumstances and as permitted by law. However, the Service is a shared bandwidth connection used by other subscribers on the same RF system. Since the Internet itself is a shared resource, others may access or monitor your IP Internet traffic. PLEASE REFER TO THE RCN INTERNET ACCESS AGREEMENT AVAILABLE ONLINE FOR ADDITIONAL INFORMATION ABOUT THE RISK OF UNAUTHORIZED ACCESS BY OTHERS AND HOW TO CONFIGURE YOUR SYSTEM TO INCREASE THE SECURITY OF YOUR COMPUTER.

13.2. RCN does not warrant that any data or files sent or received by you over the network, communications directed to or received from outside of the network, will not be subject to unauthorized access by others or that other users will not gain access to your computer or to any other network which it maybe connected. RCN has no responsibility and expressly disclaims all liability for such acts or occurrences. If you choose to run applications from your computer which permit others to gain access to it you must take appropriate security measures. Failure to do so may cause immediate termination of your service by RCN. RCN is not responsible for and expressly disclaims all liability for any damage resulting from the use of such applications.

**14. No Liability For Content**

While RCN supplies High Speed Internet access to the Internet, it is not the publisher of any High Speed Internet content provided by others through the Internet. RCN does not review, censor, or monitor and is not in any manner responsible for any programs or content sent or accessed over the Internet or made available by any individual, user, Internet provider, online service or content provider (other than RCN). Such content or programs may include, without limitation, programs or content of an infringing, abusive, profane, or sexually offensive nature. All content from other parties accessed via the Service is accessed by you and those you have authorized, all at your own risk. RCN assumes no liability whatsoever for any claims, losses, actions, damages, suits, or proceedings arising out of or otherwise relating to such content accessed using the Service.

14.1 No Liability For Incurred Phone Charges

In the instance of RCN High Speed Internet Service in an RCN one way area. You agree to verify that the local access number listed on the equipment and installation agreement falls within your local telephone calling area PRIOR to using RCN's Internet Access Services. In all events, you acknowledge that you are responsible for all telephone charges incurred as a result of your access to the internet.

## 15. Termination

You agree that, notwithstanding anything herein to the contrary, you or RCN may terminate this Service Addendum for any reason at any time. This Service Addendum will remain in effect until terminated by you or RCN. RIDER H

High Speed Cable Modem Service Addendum

## RIDERS

*Rider A*

You acknowledge and agree that this Service Addendum shall form an integral part of the RCN Internet Access Agreement to which you are a party and that the general terms of such the RCN Internet Access Agreement shall apply to this Service Addendum. You acknowledge and agree that RCN may revise the terms and conditions of this Service Addendum at any time. Any such revisions and modifications shall be binding and effective immediately on posting the revised Addendum on RCN's web site, or on notification to you by e-mail or United States mail. You agree to review the Addendum on RCN's web site periodically to be aware of any such revisions. If any revision to this Addendum is unacceptable to you, you may terminate this Addendum at any time by providing RCN with written notice by United States mail, or by contacting RCN customer service via phone or e-mail.

*Rider B*

RCN EXPRESSLY DISCLAIMS ALL LIABILITY ARISING OUT OF OR RELATING TO YOUR FAILURE TO PROVIDE RCN WITH REASONABLE ACCESS TO YOUR RESIDENCE AND COMPUTER TO INSPECT, REPAIR AND MAINTAIN RCN's EQUIPMENT. MOREOVER, SUCH FAILURE TO PROVIDE RCN WITH REASONABLE ACCESS TO THE PREMISES SHALL PERMIT RCN TO TERMINATE THE SERVICE AT RCN's DISCRETION,

*Rider C*

HOWEVER, RCN EXPRESSLY DISCLAIMS ALL LIABILITY ARISING FROM OR RELATING TO ANY INTERRUPTIONS OF SERVICE WHETHER PLANNED OR OTHERWISE.

*Rider D*

HOWEVER, RCN EXPRESSLY DISCLAIMS ALL LIABILITY ARISING FROM OR RELATING TO ANY FAILURE TO PROVIDE ADEQUATE BANDWIDTH TO ITS CUSTOMERS

*Rider E*

WITHOUT LIMITING THE SCOPE OF ANY OTHER LIMITATION OF LIABILITY SET FORTH HEREIN, RCN EXPRESSLY DISCLAIMS ALL LIABILITY ARISING FROM OR RELATING TO SUCH HIGH RISK ACTIVITIES.

*Rider F*

The Service is a residential service intended for personal, non-commercial use by you in your own home.

*Rider G*

EXCEPT TO THE EXTENT THAT SUCH DISCLAIMERS ARE EXPRESSLY PERMITTED BY LAW.

*Rider H*

RCN does not visit your home upon termination to restore or reconfigure your computer. You shall be solely responsible for such restoration or reconfiguration.

**\*Internet download speeds may vary and are not guaranteed.** Observed speeds may vary based on device connection & other factors outside of RCN's control. Gig Internet offers speeds up to 940 Mbps. See rcn.com/yourspeed (yourspeed/) for why speeds may vary. Certain equipment may be required to receive Gigabit speeds up to 940 Mbps. RCN substantiates that the cable modem equipment provided, and the configuration of such cable modem, meets the broadband speeds advertised when attached to a wired connection based on SamKnows testing procedures. High-speed modem required for RCN High-Speed Internet service.If a data outlet is needed, an additional outlet fee may apply in addition to applicable installation fees. Actual speeds may vary; stated speeds are up to subscribed to/stated speed and are not guaranteed. The actual range and reliability of a wireless network is affected by a number of factors. Downstream data speed may be affected by whether the data accessed is cached or non-cached; Internet-related factors, such as the location and configuration of each accessed server; internal network factors, including customer compliance with RCN usage policies set forth in the acceptable usage policy; (hub/about-rcn/policies-and-disclaimers) the level of overall traffic; and the customer's computer configuration. RCN's FCC Network Management Disclosure (images/pdfs/rcn-net-management-disclosure.pdf) makes available information regarding our network management practices and the performance and commercial terms of our Internet access services to enable you to make informed choices regarding the purchase and use of our services, in accordance with Part 8 of the Rules of the Federal Communications Commission (FCC).



RCN really excels in customer service. Perfection! Thank you RCN.

PM Dole, Lehigh Valley, PA



(hub/max-your-speed/rcn-wins-pcmag-readers-choice-award/)
**2019**
Fastest
Internet Providers



(hub/max-your-speed/rcn-wins-pcmag-readers-choice-award/)
Award
Winning



(hub/max-your-speed/rcn-wins-pcmag-readers-choice-award/)
**Readers Choice**
5 Time
Recognized



(hub/max-your-speed/rcn-wins-pcmag-readers-choice-award/)
**2016**
Top Consumer
Recommended

Reprinted from www.pcmag.com with permission. © 2019 Ziff Davis, LLC. All Rights Reserved.

(hub/customer-center/customer-pledge/)

## Switching Is Easy

With same-day installation, two-hour service windows and 24/7 customer support, switching to RCN has never been easier.

**Read Our Pledge (hub/customer-center/customer-pledge/)**

## CONNECT WITH US

   

(https://twitter.com/...(https://facebook.com/...(https://youtube.com/...(https://instagram.com/...)

## Internet (dc-metro/high-speed-internet/)

Features & Plans (https://www.rcn.com/dc-metro/high-speed-internet/#shop)

WiFi For Your Home (hub/wifi/)

Internet Security (https://www.rcn.com/dc-metro/high-speed-internet/#networking-security)

Devices & Equipment (https://www.rcn.com/dc-metro/high-speed-internet/internet-equipment/)

Maximize Your Speed (hub/max-your-speed)

Smart Home (smart-home/)

## Digital TV (dc-metro/digital-cable-tv/)

Features & Plans (dc-metro/digital-cable-tv/#shop)

Equipment Powered by TiVo (dc-metro/digital-cable-tv/equipment/)

Channel Lineups (dc-metro/digital-cable-tv/channel-lineups/)

On Demand (dc-metro/digital-cable-tv/video-on-demand-movies/)

Pay-Per-View (dc-metro/digital-cable-tv/pay-per-view/)

HBO MAX™, Cinemax®, SHOWTIME®, & STARZ® (dc-metro/digital-cable-tv/premium-channels/)

Premiere Channel Packages (dc-metro/digital-cable-tv/premiere-packs/)

Sports Packages (dc-metro/digital-cable-tv/cable-sports-packages/)

International Channels (dc-metro/digital-cable-tv/international/)

Entertainment Zone (hub/entertainment-zone/)

TV on the Go (hub/tv-on-the-go/)

## Phone (dc-metro/phone/)

Features & Plans (dc-metro/phone/#shop)

International Calling (dc-metro/phone/#international)

**For Customers (hub/customer-center/)**

**Where We Service (hub/about-rcn/where-we-service/)**

MyRCN (hub/customer-center/myrcn-account/)

Webmail (https://www.rcn.com/hub/customer-center/webmail/)

Contact Us (hub/customer-center/contact-us/)

For Business Customers (https://www.rcn.com/business)

Help, Guides & Support (hub/help/)

Refer a Friend (hub/customer-center/referafriend/)

Equipment Returns (hub/customer-center/equipment-return/)

Boston (hub/about-rcn/where-we-service/boston-service-areas/)

Chicago (hub/about-rcn/where-we-service/chicago-service-areas/)

Washington DC Metro (hub/about-rcn/where-we-service/dc-metro-service-areas/)

Lehigh Valley (hub/about-rcn/where-we-service/lehigh-valley-service-areas/)

New York City (hub/about-rcn/where-we-service/new-york-service-areas/)

Philadelphia (hub/about-rcn/where-we-service/philadelphia-service-areas/)

About RCN (hub/about-rcn/)  |  Careers (hub/about-rcn/careers/)  |

Contact Us (hub/customer-center/contact-us/)

Sitemap (sitemap/)  |  Policies & Disclaimers (hub/about-rcn/policies-and-disclaimers/)  |

Privacy Policy (hub/about-rcn/policies-and-disclaimers/privacy-policy/)  |

DMCA Policy (hub/about-rcn/policies-and-disclaimers/dmca-policy-and-procedure/)  |

DMCA FAQs (hub/about-rcn/policies-and-disclaimers/dmca-policy-and-procedure/dmca-faqs/)

©2020 RCN Telecom Services, LLC. All Rights Reserved.